UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TONY BRUCE BENNETT,

        Petitioner,

v.

CHRISTOPHER ARTUZ, Superintendent,
Green Haven Correctional Facility,

        Respondent.
-----------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ SEP 30 2003 ★

BROOKLYN OFFICE

ORDER AND OPINION

98-CV-1274

GERSHON, United States District Judge:

Petitioner Tony Bruce Bennett filed this application for habeas corpus relief, pursuant to 28 U.S.C. §2254, on May 29, 2001, alleging that his Sixth Amendment right to present witnesses on his own behalf was violated by the state trial judge's exclusion of a witness at trial.

**Procedural History**

On September 24, 1985, petitioner was convicted in New York Supreme Court, Queens County (Friedmann, J.), following a jury trial, of two counts of Attempted Murder in the 2nd Degree in violation of New York Penal Law §§110 and 1125.25; one count of Criminal Possession of a Weapon in the 2nd Degree in violation of New York Penal Law §265.03; two counts of Reckless Endangerment in the 1st Degree in violation of New York Penal Law §120.25; one count of Criminal Possession of Stolen Property in the 1st Degree in violation of New York Penal Law §165.50; and one count of Unauthorized Use of a Motor Vehicle in violation of New York Penal Law §165.05. Petitioner was sentenced to 15 years to life without the possibility of parole for attempted murder and concurrent sentences for his other crimes.

Petitioner timely filed an appeal of his convictions to the Appellate Division, Second Department. In that appeal, petitioner alleged that: (1) there was insufficient evidence to convict him of the crimes charged; (2) the trial judge committed reversible error in excluding one of petitioner's witnesses, in denying petitioner's motion to set aside the verdict because of newly discovered evidence, and in failing to suppress the police officers' identification testimony; (3) two elements of each Attempted Murder in the 1st Degree charge were not proved at trial; and (4) the sentence imposed was harsh and excessive. The Appellate Division affirmed petitioner's conviction on March 2, 1987. *People v. Bennett*, 128 A.D.2d 540 (2d Dept. 1987). In that decision, the Appellate Division made specific findings in relation to only two of petitioner's claims. First, the Appellate Division found that the "evidence was of sufficient quantity and quality to establish the defendant's guilt beyond a reasonable doubt." Second, the court found that, while the trial court erred in precluding the testimony of one of petitioner's witnesses, the error was harmless "in light of the overwhelming evidence of guilt." On March 19, 1987, petitioner sought leave to appeal the Appellate Division's decision. Petitioner did not raise any specific claims in his leave application nor did he mention any appended briefs. However, he now contends that he did append his Appellate Division briefs to the application. On May 7, 1997, the Court of Appeals denied petitioner's application for leave to appeal. *People v. Bennett,* 69 N.Y.2d 1001 (N.Y. 1987). Petitioner did not file a petition for certiorari to the United States Supreme Court.

In May 1991, petitioner filed a motion with the New York Supreme Court, Queens County, to vacate his sentence pursuant to N.Y. Crim. Proc. Law. §440.10 on the grounds that newly discovered evidence required reversal of his convictions; improper statements made by the prosecutor during summation violated his due process rights; trial counsel was ineffective in failing

to object to the prosecutor's summation; and sentencing counsel was ineffective in advising petitioner not to testify in support of his pre-sentence motion to set aside his conviction. Petitioner's motion to vacate was denied on August 2, 1991.

Petitioner then filed a second motion to vacate, pursuant to N.Y. Crim. Proc. Law §§440.10 and 440.30, challenging the trial judge's exclusion of one of his witnesses, alleging prosecutorial misconduct based on the prosecutor's failure to object to that witness's testimony until after the witness had been called and sworn, and alleging that his right to be present at all material stages of his trial was violated when a pre-trial hearing was held in his absence. Petitioner's second motion to vacate was denied on November 30, 1995.

Petitioner filed his first application for habeas corpus relief with this court on February 11, 1998. That petition, which raised each of the claims previously raised in petitioner's second motion to vacate as well as the ineffective assistance of trial counsel claim raised in his first motion to vacate, was dismissed *sua sponte* as untimely on February 25, 1998. Petitioner filed an appeal to the Court of Appeals for the Second Circuit in which he argued that he had never received written notice of the state Supreme Court's denial of his second motion to vacate. The Court of Appeals concluded that, if petitioner's allegations regarding his lack of written notice were true, then his second motion to vacate, filed in 1995, was still pending for the purpose of tolling the time in which petitioner could timely seek habeas corpus review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-32, 100 Stat. 1214 (1996). Accordingly, on October 25, 1999, the Court of Appeals vacated and remanded this court's dismissal of petitioner's habeas corpus application for factual findings regarding petitioner's receipt of written notice of the denial of his second motion to vacate. *Bennett v. Artuz*, 199 F.3d 116 (2d Cir. 1999). Respondent sought, and

3

the Supreme Court granted, certiorari to review the Court of Appeals' finding that petitioner's application for post-conviction relief was "properly filed" within the meaning of AEDPA's tolling provisions. On November 7, 2000, the Supreme Court affirmed the Court of Appeals' determination that petitioner's application for post-conviction review was properly filed. *Artuz v. Bennett*, 531 U.S. 4, 11 (2000). Petitioner then filed this amended petition for habeas corpus relief. As noted above, the instant petition raises only one claim, that petitioner's Sixth Amendment right was violated by the exclusion of a witness at his trial.

The State has not disputed the factual correctness of petitioner's representation before the Court of Appeals that he did not receive written notice of the New York Supreme Court's denial of his second motion to vacate, and has addressed only the merits and not the timeliness of the petition. I will therefore treat the petition as timely and address only the merits.

### Facts

Taken in the light most favorable to the People, the evidence established the following:

Shortly after midnight on February 1, 1983 a blue Chevrolet Nova, belonging to Patrice Weber, a nun in the Bronx who had reported the car stolen a day earlier, was observed by New York City Police Officers Kevin Perham and Willard Cleaver, parked on Rockaway Boulevard in the vicinity of North Conduit in Queens County, New York. The officers testified that there were four passengers in the vehicle at the time it was first observed parked in front of a gas station. After responding to an unrelated call, the officers observed the same Nova driving north on Rockaway Boulevard with only three passengers. According to both officers' testimony, Officer Cleaver, who was driving an unmarked police vehicle, pulled up behind the Nova as it pulled over to allow one

4

of the passengers, described by Officer Cleaver as a black male approximately 5'9" in height, to disembark from the passenger side. Both officers identified the remaining male passenger as petitioner and the driver of the vehicle as petitioner's co-defendant Derrick Chisolm. When the officers turned on their flashing grill lights and red turret light, the Nova sped away. The officers pursued the vehicle. Officer Cleaver testified that petitioner held up a silver revolver, turned to look at the officers, and fired two shots. Officer Perham also testified that petitioner fired two shots and that he, in turn, fired his weapon at the fleeing vehicle. Both officers testified that they had more than two chances to observe petitioner's face during the course of the chase and shooting, although Officer Cleaver testified that the chase was conducted at a moderately high rate of speed and in variable lighting conditions. A stipulation was entered into evidence that a ballistics expert found what appeared to be bullet crease damage to the hood of the police car. Officer Cleaver testified that prior to the chase there was no bullet damage to the car. According to the officers' testimony, the two occupants of the car abandoned it behind a schoolhouse and fled on foot across an adjoining field. Both officers testified that petitioner had the gun in his hand as he fled the scene. Officer Perham testified that petitioner paused before fleeing and aimed his gun at the officers. Officer Perham again returned fire.

The investigation of the shooting was handled by Detective Collins of the 105th Precinct. Detective Collins testified that he spoke with Officer Perham the morning of the shooting and with Officer Cleaver two days later by telephone. His report was entered into evidence. It stated that the officers' accounts of the shooting were identical, but that Officer Cleaver did not believe that he could make a positive identification of either perpetrator. Officers Cleaver and Perham and Detective Collins provided consistent testimony that they met on February 23, 1983 to canvas the

site of the chase and shooting. During that canvas, both officers identified petitioner's co-defendant, Derrick Chisolm, as he was walking in the company of two male companions down Farmer Avenue near the site of the chase. Detective Collins immediately arrested Mr. Chisolm. Both officers returned with Detective Collins to the 105th Precinct House. Both subsequently picked petitioner out of separate line-ups. Detective Collins testified that both petitioner and Mr. Chisolm's names appeared on a list of possible suspects in relation to the shooting as early as February 17, 1983.

Julian Ishmael, petitioner's alibi witness, testified that he and petitioner played basketball together from approximately 2:00 p.m. to 6:00 p.m. on January 31, 1983 and then returned to Mr. Ishmael's home where they shared a bottle of alcohol until approximately 8:00 p.m. Mr. Ishmael testified that he "dozed off" during this time, and woke up around 11:00-11:30 p.m. at which point petitioner stated he wanted to return to his own home. Mr. Ishmael testified that he and petitioner went to the corner where they stopped to observe police activity related to the shooting. There, according to Mr. Ishmael's testimony, he and petitioner discussed the increased police presence with an unidentified man standing before his yard. Mr. Ishmael testified that, because of the late hour, petitioner decided to return to spend the night at Mr. Ishmael's home. During cross-examination, Mr. Ishmael twice changed his testimony regarding the time frame in which the events of that evening occurred. He also admitted that he had, on a previous occasion, reported to investigators that he wasn't sure of the exact date on which petitioner stayed at his home.

Petitioner next called Mr. Elias Mahamed. The prosecutor objected to Mr. Mahamed's proposed testimony on the ground that it contained alibi testimony and that petitioner had not complied with the alibi notice requirements set forth in N.Y. Crim. Proc. Law §250.20. Petitioner's trial counsel argued that Mr. Mahamed's testimony was proffered solely to bolster the testimony of

Mr. Ishmael and related only to petitioner's whereabouts approximately one hour after the shootings. Petitioner's counsel proffered that Mr. Mahamed would testify that he, Mr. Ishmael, and petitioner met outside Mr. Mahamed's home after the shooting to observe the police investigation. The trial judge excluded Mr. Mahamed's testimony on the ground proffered by the prosecutor.

Petitioner next took the stand in his own defense. Petitioner testified that he and his co-defendant Derrick Chisolm did not associate with one another because petitioner had previously testified against Mr. Chisolm's brother at a murder trial, that he and Mr. Chisolm were currently at odds with one another, and that he had a previous relationship with Detective Collins stemming from his participation in Mr. Chisolm's brother's trial. Petitioner testified that he spent the evening of January 31, 1983 with Mr. Ishmael playing basketball and drinking. Petitioner also testified that he fell asleep while at Mr. Ishamael's home and woke up around 11:30 p.m. He then testified that he and Mr. Ishmael went to Mr. Mahamed's home to observe police activity in the neighborhood.

Finally, Derrick Chisolm took the stand in his own defense. He corroborated petitioner's account of the history of hostility between himself and petitioner and denied that he had any responsibility for the crimes charged.

The jury found petitioner guilty of all counts charged, but acquitted Mr. Chisolm of any crime.

Approximately three years after the close of the trial, petitioner submitted an affidavit in support of his first motion to vacate which admitted that he and Mr. Ishmael provided false testimony about their whereabouts on the evening of January 31, 1983. In that affidavit, petitioner admitted that he and Mr. Ishmael were passengers in the blue Chevrolet Nova at the time Officers Cleaver and Perham observed it on Rockaway Boulevard. Petitioner stated, however, that both he

and Mr. Ishmael exited the vehicle prior to the police chase and the shootings which gave rise to the charges against him.

### Standard of Review

Petitioner filed this petition for a writ of habeas corpus after the effective date of AEDPA, which requires federal courts reviewing habeas corpus petitions brought by petitioners in state custody to pay deference to the conclusions of the state trial court. Specifically, 28 U.S.C. §2254(d), as amended by AEDPA, provides that:

> An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim- (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) further provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner for habeas corpus relief bears the burden of rebutting that presumption of correctness by clear and convincing evidence. *Id.*

A state court decision is contrary to clearly established Supreme Court precedent if it "contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an unreasonable application of Supreme Court precedent if, from an objective standpoint, the state court applied Supreme Court precedent unreasonably, that is,

not simply incorrectly or erroneously. *Id.* The increment of incorrectness beyond error that is required, however, "need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Sellen v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

## I. Exhaustion of State Court Remedies

A state prisoner seeking to vacate his conviction on the ground that his federal constitutional rights were violated must first exhaust all available state remedies in relation to his claims. 28 U.S.C. §2254(b). To satisfy the exhaustion requirement the petitioner must demonstrate that the particular legal claim asserted in his petition for habeas corpus relief has been "fairly presented" to the highest court of the state in which he was convicted. *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991). Fair presentation of a claim to the New York Court of Appeals, the highest court in New York State, may be found where petitioner either requested in his leave application that the Court of Appeals "consider and review all issues outlined" in the Appellate Division briefs appended to his application, *Morgan v. Bennett*, 204 F.3d 360, 370-71 (2d Cir. 2000), or where petitioner raised specific issues in the letter accompanying his leave application. Mere attachment of Appellate Division briefs, without more, is not, however, sufficient to constitute a fair presentation of a specific claim. *See Copeland v. Walker*, 258 F. Supp.2d 105, 130 (E.D.N.Y. 2003); *Black v. McGinnis*, 2000 U.S. Dist. LEXIS 20575, at *18 (S.D.N.Y. 2000). This is especially true where the petitioner addresses only a few of the claims raised in the Appellate Division briefs in his leave application. In such cases, the petitioner is deemed to have abandoned any claim not specifically discussed in his leave application. *Jordan v. LeFevre*, 206 F.3d 196, 199 (2d Cir. 2000); *Grey*, 93 F.2d at 121;

*Jamison v. Berbary*, 2002 U.S. Dist. LEXIS 8637, *62 (S.D.N.Y. 2002).

Petitioner in this case has not met any of the standards for fair presentation outlined in the above-mentioned cases. Petitioner did not direct the Court of Appeals to the claims raised in his Appellate Division briefs or to those discussed by the Appellate Division in its review of the trial judge's rulings. Nor did petitioner discuss any specific claims in his leave application. In fact, petitioner's leave application did not mention the claims raised or the appended briefs at all. Mere attachment of his briefs to the leave application, without even passing reference to the claims raised therein, is not sufficient to fairly raise the claim before the New York Court of Appeals.

New York law permits the filing of only one direct appeal and one application for leave to appeal to the Court of Appeals. N.Y. Court Rules §500.10(a); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000); *Brown v. Superintendent*, 2003 U.S. Dist. LEXIS 6721,*9; 2003 WL 1948803, *4 (S.D.N.Y. 2003). Petitioner is therefore barred from seeking further direct review of his claim from the New York courts. "Where a petitioner has failed to present his or her federal claims to the state courts in accordance with state procedural requirements, and no longer has recourse to state review, he or she will be found to have met the exhaustion requirement . . . , however, the claims will be subject to procedural bar." *Norwood v. Hanslmaier*, 1997 U.S. Dist. LEXIS 22503, *6, 1997 WL 67669, *2 (E.D.N.Y. 1997). In order to overcome that bar, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," or, in the alternative, "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Jordan v. LeFevre*, 22 F. Supp.2d 259, 269 (S.D.N.Y. 1998), *rev'd in part on other grounds*, 206 F.3d 196 (2d Cir. 2000). Petitioner in this case has not done so.

## II. Exclusion of Corroborative Testimony

Even if petitioner could overcome the procedural bar to review of his habeas corpus application, his claim fails on the merits because the trial court's failure to allow the testimony of Mr. Mahamed was harmless error. The Sixth Amendment's Compulsory Process Clause, applicable to state criminal proceedings through the Due Process Clause of the Fourteenth Amendment, provides a criminal defendant with the right "to have compulsory process for obtaining witnesses in his favor." Like other forms of trial error, however, the improper exclusion of a witness during a trial does not automatically require reversal, but rather is subject to harmless error analysis. *See Noble v. Kelly*, 246 F.3d 93 (2d Cir. 2001). In this case, respondent appears to concede that the trial court's exclusion of petitioner's witness was a Sixth Amendment violation. Accordingly, this court will proceed with a harmless error analysis.

The Appellate Division concluded that the error in this case was harmless beyond a reasonable doubt. *People v. Bennett*, 128 A.D.2d 540 (2d Dept. 1987). The Court of Appeals for the Second Circuit has declined to decide whether, after AEDPA, a federal habeas corpus court should continue to apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), or determine instead whether the state court's decision was "contrary to, or involved an unreasonable application of" *Chapman v. California*, 386 U.S. 18, 24 (1967), the case which requires state courts to apply a "harmless beyond a reasonable doubt" standard. *Ryan v. Miller*, 303 F.3d 231, 253-54 (2d Cir. 2002); *Noble*, 246 F.3d at 101 n.5; *Fuller v. Gorczyck*, 273 F.3d 212, 219-20 (2d Cir. 2001). As in those cases, this court would reach the same conclusion under either standard.

First, applying *Brecht*, the trial evidence against petitioner in this case was, at the least, "weighty." *See Samuels v. Mann*, 13 F.3d 522, 525 (2d Cir. 1993); *Glenn v. Bartlett*, 98 F.3d 721,

11

729 (2d Cir. 1996); *Ryan v. Mann*, 73 F. Supp. 2d 241, 252 (E.D.N.Y. 1998), *aff'd* 201 F.3d 432 (1999). Two policemen provided consistent testimony about the details of the chase in question and the circumstances under which they were able to view petitioner's face. Each officer separately identified petitioner as the perpetrator of the crimes charged in a non-suggestive line-up held at the 105th Precinct less than one month after the shootings, as well as at trial. *See Ryan v. Mann*, 73 F. Supp. 2d at 253. And, applying AEDPA/*Chapman*, it cannot be said that the Appellate Division's decision that the evidence was indeed "overwhelming" is not entitled to AEDPA deference.

Second, the excluded evidence could not be expected to have altered the outcome in this case. Petitioner presented an alibi witness and himself testified to an alibi. Petitioner's witness provided testimony that he and petitioner met with the excluded witness approximately an hour after the shootings. Petitioner himself provided detailed testimony regarding his activities that evening and his meeting with Mr. Ishmael and the excluded witness, Mr. Mahamed. Petitioner's proffer in relation to Mr. Mahamed's testimony did not include any alibi testimony regarding petitioner's whereabouts during the commission of the crime. On the contrary, petitioner's presence at Mr. Mahamed's home, which was only a few short blocks away from the scene of the crime, almost an hour after the crime occurred, easily could have been viewed by the jury as entirely consistent with petitioner's guilt. At most, Mr. Mahamed's testimony would have served to bolster the petitioner's and Mr. Ishmael's testimony regarding petitioner's whereabouts nearly an hour after the crimes were committed.

Finally, the court notes that petitioner submitted an affidavit in support of his first motion to vacate his sentence indicating that both he and his alibi witness perjured themselves on the stand in relation to their testimony regarding their activities on the evening of the crime. The affidavit

states that petitioner and Mr. Ishmael "were in fact in the blue Chevy on the night of the shootout." This is powerful evidence that petitioner manufactured a false alibi at trial and serves to corroborate the identifications made by the police officers.

## Conclusion

For the reasons stated in the preceding Opinion and Order, petitioner's application for habeas corpus relief is denied and the Clerk of Court is directed to close this case. As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

SO ORDERED.

Dated: September 26, 2003
Brooklyn, NY

13